UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

:
LINDSEY BEDIENT,                              :    Case No. 1:16-CV-02256
                                              :
    Plaintiff,                               :
                                              :
    v.                                        :    OPINION & ORDER
                                              :    [Resolving Docs. 14, 26]
SAFE SECURITY INC., et al.,                   :
                                              :
    Defendants.                               :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On August 8, 2016, Plaintiff Lindsey Bedient filed a class action lawsuit against Defendants Safe Security, Inc. and ICV Partners, LLC[1] in the Lorain County Common Pleas Court.[2] Defendants removed the case to this Court on September 9, 2016.[3] On November 11, 2016, Plaintiff amended her complaint to include additional defendants Security Alarm Financing Enterprises, L.P. and Callvation, LLC.[4]

On October 7, 2016, Defendants filed a motion to transfer the case to the Northern District of California.[5] On November 23, 2016, Defendant ICV Partners, LLC filed a motion to dismiss for failure to state a claim.[6] For the reasons below, the Court **DENIES** the motion to transfer and **GRANTS** the motion to dismiss.

## I.   BACKGROUND

Plaintiff Lindsey Bedient brings a class action lawsuit again against SAFE Security, Inc.

---

[1] Plaintiff originally named "ICV Partners" in her complaint. ICV's proper name is "ICV Partners, LLC." Doc. 6.
[2] Doc. 1.1.
[3] Doc. 1.
[4] Doc. 20. Defendants ICV and Safe Security answered the amended complaint. Docs. 24, 25.
[5] Defendants ICV Partners, LLC, Safe Security, Inc., and Security Alarm Financing Enterprises L.P. filed the motion to transfer. Doc. 14. Plaintiff responded. Doc. 19. Defendants replied. Doc. 21.
[6] Doc. 26. Plaintiff responds. Doc. 33. Defendant ICV filed an earlier motion to dismiss regarding the original complaint. Doc. 13.

Case No. 1:16-CV-02256
Gwin, J.

("Safe, Inc."), Security Alarm Financing Enterprises, LLC ("Safe, LP"), ICV Partners, LLC ("ICV") and Callvation, LLC ("Callvation") (collectively "Defendants") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). She argues that Defendants made prerecorded and autodialed calls to people who have not given their consent and also to people who have registered for the federal Do Not Call Registry.

Safe, Inc., a Delaware corporation, has its place of business in San Ramon, California.[7] Safe, Inc. is a holding company for Safe, LP, a California limited liability company that also resides in San Ramon, California.[8] Safe, LP, a security services company that sells products like alarm systems,[9] does business as "Safe Security".[10]

Plaintiff Bedient, an Ohio resident,[11] alleges that she received four automated, prerecorded calls to her cellular telephone soliciting Safe Security services, including alarm systems.[12] Since December 2004, Bedient's phone number has been on the national Do Not Call Registry.[13]

Safe, LP contracts with Callvation, a Florida limited liability company based in Hollywood, Florida,[14] to place marketing calls on its behalf.[15] Callvation uses an automated dialer and prerecorded messages.[16]

Callvation generates customer lists but does not complete calls until after Safe, LP

---

[7] Doc. 20 at 2; Doc. 14-1 at 2. San Ramon is in the Northern District of California. Security Alarm Financing Enterprises, L.P., also of San Ramon, is the holding guarantor and limited partner of Safe Security, Inc. Doc. 14-1 at 2; Doc. 20 at 1.
[8] *Id.*
[9] Doc. 20 at 2.
[10] Doc. 14-1 at 2.
[11] Doc. 20 at 4.
[12] *Id.* at 5.
[13] *Id.*
[14] Doc. 14-1 at 3.
[15] Doc. 20 at 3-4; *see also* Doc. 14-1 at 3.
[16] *Id.*

2

Case No. 1:16-CV-02256
Gwin, J.

reviews the lists.[17] Safe, LP states that another company, PossibleNOW, Inc. ("PossibleNOW"), "scrubs" customer lists to get rid of any numbers listed on the federal Do Not Call Registry before calls are made.[18] PossibleNOW resides in Georgia.[19]

In her complaint, Plaintiff Bedient also sues Defendant ICV Partners, LLC, a private equity firm with offices in Georgia and New York.[20] Plaintiff argues that ICV's website and various press releases state that ICV "acquired" Safe, Inc. in 2012.[21] Plaintiff also states that ICV controls and has representatives on Safe, Inc.'s board of directors.[22]

On October 7, 2016, Defendants filed a motion to transfer the case to the Northern District of California.[23] Defendants argue that convenience favors transfer because most witnesses and relevant records are located with Safe, Inc. and Safe, LP in California.[24] Defendants also argue that Plaintiff's preferred venue deserves little weight because she brings a nationwide class action.[25]

Plaintiff Bedient argues that records and witnesses, and therefore venue, may be located wherever a company involved in the autodialing has offices—including California, Florida, Arizona,[26] Georgia, and New York.[27] Bedient also argues against transfer because she resides in Ohio and received the allegedly illegal calls here.[28]

---

[17] Doc. 14-1 at 3.
[18] *Id*.
[19] Doc. 19 at 1-2.
[20] Doc. 20 at 3.
[21] *Id*.
[22] *Id*.
[23] Doc. 14. Plaintiff responded. Doc. 19. Defendants replied. Doc. 21.
[24] Doc. 14-1 at 3. Defendants argue that any Callvation records of the alleged phone calls are no longer available. Safe, LP and Callvation ended their relationship on April 1, 2016, and Callvation keeps records for only three months after a customer relationship ends. *Id*. Therefore, any remaining records would be in California at Safe, LP's offices. *Id*.
[25] *Id*. at 7-8.
[26] Plaintiff alleges that Safe, Inc. or Safe LP has offices, records and potential witnesses in Arizona. Doc. 19 at 3.
[27] *See generally* Doc. 19.
[28] *Id*. at 2.

3

Case No. 1:16-CV-02256
Gwin, J.

On November 23, 2016, Defendant ICV filed a motion to dismiss Plaintiff's amended complaint for failure to state a claim.[29]

ICV argues that the complaint allegations against it—that ICV "acquired" Safe, Inc. in 2012 and controls Safe, Inc's board—are false.[30] And, even if true, ICV argues that these allegations do not support ICV's direct or indirect liability.[31]

Plaintiff Bedient responds that ICV is answerable for Safe, Inc., a partner and guarantor of Safe, LP. Thus, ICV is liable for Safe, LP's contracted phone calls under agency principles.[32]

## II. Motion to Transfer

### A. Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Sixth Circuit typically requires "a district court [to] consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"[33] A district court has broad discretion over whether to transfer a case under §1404.[34]

If the original venue is proper, "a plaintiff's choice of forum is given substantial weight," unless the defendant shows that convenience and the interests of justice "strongly favor

---

[29] Doc. 26.
[30] Doc. 26 at 4. ICV represents that it has no legal or economic ownership interest in Safe, Inc. The Court does not consider the "Mims declaration" cited in Defendant's motion to dismiss—which concerns ICV's relationship to Safe, Inc.—as it is information outside the face of the complaint and is not properly considered in deciding a motion to dismiss. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).
[31] Doc. 26 at 4.
[32] Doc. 33 at 1.
[33] *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 1:10–CV–02713 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)).
[34] *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citations omitted).

4

Case No. 1:16-CV-02256
Gwin, J.

transfer."[35] Ultimately, "[t]he defendant, because it is the party requesting a transfer of venue, bears the burden of proof to show the factors weigh 'strongly' in favor of transfer."[36] When a defendant makes such a showing, transfer is appropriate. "But unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[37]

Typically, where venue is proper in more than one forum, either party will face some inconvenience no matter which venue is chosen. Consequently, if a change of venue merely shifts the inconvenience from one party to another, a change is not warranted.[38] "Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to merit transfer."[39]

### B. Analysis

While Defendants argue that the Northern District of California is a more convenient place to litigate, they agree that venue is proper in the Northern District of Ohio.[40] Therefore, the only question is whether convenience and the interests of justice "strongly favor transfer."[41] The Court finds that they do not.

Although Plaintiff Bedient agrees that the case may have been brought in the Northern District of California,[42] she argues that her chosen forum deserves substantial weight. Defendants argue that because Plaintiff brings a class action, her chosen forum receives no deference.[43]

---

[35] 14D Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3801 (4th ed.).
[36] *Picker Int'l, Inc., v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).
[37] *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added); *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828.2 (4th ed. 2014) ("[C]ourts afford at least some deference to the plaintiff's choice of forum.").
[38] *Kirk v. Shaw Envtl., Inc.*, No. 1:09-cv-1405, 2010 WL 520827, at *3 (N.D. Ohio Feb. 5, 2010) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).
[39] *Id.* (citing *Hartford Accident & Indem. Co. v. Dalgarno Transp., Inc.*, 618 F. Supp. 1450, 1452 (S.D. Miss. 1985)).
[40] Doc. 14-1 at 4.
[41] 14D Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3801 (4th ed.).
[42] Doc. 19 at 4.
[43] Doc. 14-1 at 7 (citing collection of cases).

Case No. 1:16-CV-02256
Gwin, J.

While Plaintiff's claim to deference is "considerably weakened"[44] because she brings a class action, it is not obliterated. And where courts transfer venue in collective or class action cases, factors not present here often play a role. Defendants cite *Blake v. Family Dollar Stores, Inc.*, which noted that plaintiff's forum choice received less deference because she brought a collective action.[45] However, the court transferred the case to North Carolina because, "*most importantly*, seven other district courts [had] transferred [identical] collective actions against defendants to the Western District of North Carolina, Charlotte Division."[46] The court also noted that "the main sources of documentary proof [were] housed in defendants' headquarters in North Carolina."[47]

Quite differently here, other factors weigh against transfer. For example, relevant documents and witnesses are likely scattered across the United States as opposed to being concentrated in Safe, Inc. and Safe, LP's offices in the Northern District of California. Multiple corporate actors were involved in making calls, from producing the advertised product, to generating call lists, to "scrubbing" call lists. These actors have offices in many states, including California, Florida, and Georgia. Relevant records are likely to be found in each location. And, as Plaintiff Bedient brings a nationwide class action, unnamed plaintiffs' phone records may also become relevant as the case progresses. Such records will likewise be located across the country.

At bottom, the motion to transfer is a battle of convenience—Plaintiff Bedient would prefer to litigate in Ohio, Defendants prefer California. And a shift of inconvenience from one party to the other is not sufficient reason for transfer.[48]  Accordingly, the Defendants' motion to transfer is **DENIED.**

---

[44] *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).
[45] No. CIV.A. 2:07-CV-361, 2007 WL 1795936, at *3 (S.D. Ohio June 19, 2007).
[46] *Id*. (emphasis added).
[47] *Id*. at *2.
[48] *Kirk*, 2010 WL 520827, at *3 (N.D. Ohio Feb. 5, 2010) (citing *Van Dusen*, 376 U.S. at 646).

6

Case No. 1:16-CV-02256
Gwin, J.

### III. Motion to Dismiss

#### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[49] The plausibility requirement is not a "probability requirement."[50] The Plaintiff need not try to prove his case in the complaint. But there must be "more than a sheer possibility that the defendant has acted unlawfully."[51]

Federal Rule of Civil Procedure 8 provides the general pleading standard and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief."[52] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[53] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.[54]

#### B. Analysis

In its motion to dismiss, Defendant ICV argues that it is neither directly nor vicariously liable for the alleged phone calls. Under the TCPA, a party is directly liable if it "takes the steps necessary to physically place a telephone call."[55] Plaintiff alleges that Callvation, not ICV,

---

[49] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)).
[50] *Id.* (quoting *Bell Atlantic,* 550 U.S. at 556).
[51] *Id.*
[52] Fed. R. Civ. P. 8(a)(2).
[53] *Iqbal,* 556 U.S. at 678–79 (citations omitted).
[54] *Id.*
[55] *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) (citing *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules,* 28 F.C.C. Rcd. 6574, 6575 ¶ 3, 6583 ¶¶ 26–27 (2013)).

7

Case No. 1:16-CV-02256
Gwin, J.

physically made the alleged phone calls.[56] Therefore, the only question is whether ICV is vicariously liable.

A party may be vicariously liable for TCPA violations under federal common law agency principles.[57] Plaintiff argues that ICV is liable under agency and apparent authority doctrines.[58] Neither argument succeeds.

Plaintiff does not successfully plead a principal-agent relationship between ICV and Safe, Inc.[59] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[60]

Plaintiff's allegations, accepted as true, are too tenuous to establish an agency claim against ICV. In her amended complaint, Plaintiff alleges that in 2012 ICV "acquired" Safe, Inc.[61] and has representatives on and control over Safe, Inc.'s board.[62] Plaintiff also alleges that Safe, Inc. controls Safe LP, the company that hires Callvation to place calls.[63]

"A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned."[64] ICV's "acquisition" of Safe, Inc. cannot independently trigger vicarious liability. Furthermore, Plaintiff's allegation that ICV has general control over Safe, Inc.

---

[56] Doc. 20 at 3.
[57] *Imhoff*, 792 F.3d at 635 (citing *Dish Network*, 28 F.C.C. at 658493 ¶¶ 28–47). Those principles include, for example, actual authority, apparent authority, and ratification. *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015).
[58] Doc. 33 at 6-9.
[59] The Court notes that establishing such a relationship would be only the first necessary link in the chain—Plaintiff would also need to plead that ICV is in a principal-agent relationship with Safe LP (the party who hired the directly liable entity) and therefore also Callvation (the directly liable entity that allegedly placed the phone calls).
[60] *Keating*, 615 F. App'x at 372 (quoting *Restatement (Third) of Agency* § 1.01 (2006)).
[61] Plaintiff cites an ICV press release for this allegation. Doc. 20 at 3.
[62] *Id*.
[63] *Id*.
[64] *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007); *see also Roof v. Conway*, 133 F.2d 819, 823 (6th Cir. 1943) ("Mere ownership by one corporation . . . of another does not . . . create a relationship of principal and agent.").

8

Case No. 1:16-CV-02256
Gwin, J.

is insufficient. Plaintiff does not allege that ICV had any knowledge of or ordered the alleged calls. Without allegations that ICV directed Safe, Inc. (or Safe, LP or Callvation) to act on ICV's behalf and make the alleged phone calls, Plaintiff's agency claim fails.

Plaintiff's apparent authority argument also fails. "Under the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.'"[65]

Plaintiff argues that ICV held Safe, Inc. out as its agent through the 2012 press release. Plaintiff does not, however, allege that ICV held Callvation—the party directly liable for making the phone calls[66]—out as its agent. The alleged chain of ownership between ICV, Safe, Inc., Safe, LP, and Callvation is too feeble to satisfy the "holding out" requirement.

And, although Plaintiff alleges that ICV acquired Safe, Inc. in 2012, there are no allegations that Plaintiff somehow "relied" on Callvation's "apparent authority" to act on ICV's behalf.[67] Accordingly, Plaintiff's apparent authority argument fails.

The Court therefore **GRANTS** Defendant ICV Partners, LLC's motion to dismiss.

---

[65] *Keating*, 615 F. App'x at 373–74 (quoting *Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998)*).
[66] *See supra* at 7.
[67] In fact, Callvation was not included in the initial complaint. Plaintiff did not "rely upon" the tenuous connection between ICV and Callvation when she received the alleged phone calls if she did not discover Callvation's role until after she filed this lawsuit.

9

Case No. 1:16-CV-02256
Gwin, J.

### IV. CONCLUSION

For the reasons above, the Court **DENIES** the motion to transfer and **GRANTS** the motion to dismiss.

IT IS SO ORDERED.

Dated: January 10, 2017          *s/     James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE